John Thomas **LOFTUS**, Plaintiff

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 60–926.

United States District Court
D. Massachusetts.

June 14, 1961.

Wm. A. Doherty, Boston, Mass., for plaintiff.

Elliot Richardson, U. S. Atty., Weyman I. Lundquist, Asst. U. S. Atty., Boston, Mass., for defendant.

CAFFREY, District Judge.

This is an action brought under the Federal Tort Claims Act, Title 28, Sec. 1346, United States Code. Plaintiff seeks to recover damages for personal injuries and property damage allegedly caused by the negligence of the operator of a vehicle of the United States Navy which was in collision with an automobile owned and operated by the plaintiff, on January 11, 1960, at the intersection of Routes 25 and 27, in Westford, Massachusetts.

I find that the plaintiff, on said date, was operating his 1952 Ford two-door sedan in a southwesterly direction on Route 27 near the intersection thereof with Route 25, and that on Route 25 Chief Petty Officer Maurice L. Panebianco, accompanied by Chief Petty Officer Walter G. Fike, was operating a United States Navy Chevrolet four-door sedan in a northeasterly direction.

At the trial it was conceded that Chief Petty Officer Panebianco is a Navy enlisted man who was acting within the scope of his employment at the time and place of the accident. It was further stipulated by counsel that as a result of the accident, property damage of $215 was sustained by plaintiff's vehicle and property damage of $699.77 by the Government vehicle.

All witnesses testified that on the day of the accident both Routes 25 and 27 were wet and that there was a substantial amount of hard-packed snow in the intersection. From the testimony of the witnesses and from photographs introduced in evidence, I find that plaintiff's vehicle struck the right side of the Government vehicle, the points of contact being the entire front of plaintiff's vehicle —bumper, grille, and fenders—and the right front half of the Government vehicle extending from a point a few inches to the rear of the headlights on the right side to the rear of the front door on the right (passenger) side. I find that the collision took place in the quarter of the intersection which was to the right of the center line of each of the two drivers as they proceeded on their respective trips, and that at the point of impact the Government vehicle was slightly more than two-thirds of the way through the intersection on its proper side of Route 25.

I am satisfied that the Government vehicle was struck with considerable violence by the plaintiff's vehicle, as is evidenced by the damage to both vehicles. At the trial the testimony of the witnesses varied sharply as to the respective speed of the two vehicles. I find that the version given by the two occupants of the Government vehicle is corroborated by the photographic evidence offered at the trial. On the other hand, I find that plaintiff's description of the Government vehicle as he first observed it, as being identifiable only as "a black flash," is not consistent with his statement that it took fifteen seconds for the so-called "black flash" to travel some three car-lengths. I likewise find it significant that one of

the Government witnesses testified that in a conversation with the plaintiff at the scene immediately after the accident, in answer to the question, "What happened," the plaintiff responded, "I don't know. I hit the brakes and nothing happened."

There also was evidence to the effect that on the day in question the sun was low in the sky and so positioned as to shine in the eyes of a person proceeding in the direction in which the plaintiff was proceeding at the time of the accident.

■ On the plaintiff's action against the United States I find that the plaintiff was guilty of contributory negligence, and the Complaint is dismissed, without costs.

■ With reference to the Government's counterclaim for property damage to the Navy vehicle, I find that if the Government vehicle made the two complete stops testified to by both occupants of the Government vehicle—one stop allegedly at the stop sign 30 feet away from the intersection and the other at a point which would be a projection of the curb lines of the intersection itself—and that if both occupants of the Government vehicle looked to their left and to their right as they testified, then either the driver of the Government vehicle was negligent for failing to see plaintiff's oncoming vehicle as he looked to his right, where he had a clear view in the direction from which plaintiff was coming well in excess of 240 feet from the stop sign, and an unimpeded view of at least 240 feet from the edge of the intersection, or the operator of the Government vehicle was negligent if he looked to his right and did not see plaintiff's on-coming vehicle by reason of the condition of the windows of the Government vehicle, since the entire front half of the vehicle appears, in defendant's Exhibit B, to be substantially splattered with a mixture of sand and other road dirt commonly picked up by vehicles traveling on wet sanded roads in winter time. The only other explanation for the Government

operator's not seeing plaintiff's vehicle in time would be the failure of the Government vehicle to have stopped as testified to by its occupants. Whatever the reason for the failure of the occupants of the Government vehicle to observe plaintiff's on-coming vehicle in time to obviate the collision, I find that the operator of the Government vehicle was negligent in failing to see the approach of plaintiff's vehicle at such an open intersection sufficiently in advance of the collision to avoid it.

Judgment for the plaintiff, without costs, on defendant's counterclaim.